UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MACTEC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CV-00340 |
| | ) | |
| BECHTEL JACOBS COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MACTEC, INC.'S MEMORANDUM OF SERVICES RENDERED IN SUPPORT OF ITS
MOTION FOR ATTORNEYS' FEES
AND COMPUTATION OF PRE-JUDGMENT INTEREST**

Plaintiff MACTEC, Inc. ("MACTEC"), by and through its undersigned attorneys, respectfully submits this memorandum in support of its motion for attorneys' fees and pre-judgment interest pursuant to the Court's Judgment Order dated May 19, 2008 ("Judgment Order") and in accordance with the provisions of Fed.R.Civ.P. 54(d)(2). In support of this memorandum, Plaintiff hereby submits the Declarations of Brian G. Corgan, Esq. (attached hereto as Exhibit 1), Mr. Kirtus Lowther (attached as Exhibit B to Mr. Corgan's declaration), John Threadgill, Esq. (attached hereto as Exhibit 2), and Ray Lacy, Esq. (attached hereto as Exhibit 3). Based on these declarations and the following, MACTEC is entitled to recover its claimed attorneys' fees in the amount of $1,618,566.33 and pre-judgment interest in the amount of $333,979.

**I.** **INTRODUCTION**

This case involves both complex engineering concepts as well as unique legal principles found in the specialized areas of construction and federal procurement law. This case also arises

1

US2000 10881547.5

Case 3:05-cv-00340  Document 129  Filed 06/17/08  Page 1 of 17  PageID #: 2877

out of a contract to design and install a landfill cap and network of trenches on a radioactive waste landfill. Defendant Bechtel Jacobs Company ("BJC") hired MACTEC to design and construct the hydraulic isolation system to protect further release of radioactive contamination into the waters of Eastern Tennessee. MACTEC's claims and defenses therefore center on the technical concepts of hydrology, hydro-geology, and groundwater modeling. This Court heard testimony from recognized experts in all three of these fields.

MACTEC's claims also required the expertise of a construction claims consultant. This expert offered testimony in support of MACTEC's damages that ranged from schedule delay, to loss of productivity, to increased extended overhead. Notably, the requisite proof to support these claims stem from the legal concepts and precepts of construction and federal procurement law. Accordingly, MACTEC had to digest and persuasively communicate these complicated concepts before it could recover its damages. Similarly, MACTEC was required to advance these concepts and principles to successfully overcome BJC's defenses and defeat its Counterclaims.

This Court confirmed MACTEC's ability to do just that. After a two week bench trial which included testimony from over ten witnesses, the introduction of over 882 exhibits, and over 312 pages of proposed findings of fact and conclusions of law, this Court correctly held in its 174 page Findings of Fact and Conclusions of Law ("FOF/COL") that MACTEC was entitled to its attorneys' fees and interest because BJC did not deal in good faith, common fairness, or common equity throughout the project.[1] See FOF/COL at ¶ 626 (Docket No. 124). In addition to attorneys' fees, this Court awarded MACTEC $8,767,552 of the prayed for $9,177,422 in subcontract balance and extra work claims while rejecting BJC's <u>entire</u> counterclaim of

---

[1] The Court relied upon the Tennessee Prompt Payment Act – and the cases interpreting this statute – to find that as a matter of law MACTEC was entitled to payment of interest and attorneys' fees. See T.C.A. § 66-34-301 and FOF/COL at ¶ 647.

US2000 10881547.5

$3,508,391. The award of the subcontract balance and extra work items alone represents a recovery of 96 cents for each dollar MACTEC requested. The significance of this result is magnified when the rejection of BJC's <u>entire</u> $3.5 million counterclaim is added to the calculation. The results constitute a resounding victory.

However, these results did not come without a price. BJC's "pervasive bad faith and unfair dealings" required MACTEC to incur a significant amount of attorneys' fees and costs to recover on its claims and defeat BJC's Counterclaim. Despite MACTEC's entitlement -- determined by the Court to be virtually due in its entirety -- BJC unreasonably refused to pay MACTEC without forcing MACTEC to resort to litigation. What's worse, BJC repeatedly threatened to terminate MACTEC for a default while BJC received relief and compensation from DOE for the very same impacts suffered by MACTEC. <u>See</u> FOF/COL ¶¶ 56 – 68. So, while BJC was reaping the benefits of MACTEC's work, it was forcing MACTEC to incur millions upon millions of dollars in damages under the constant threat of termination. These bad faith acts pushed MACTEC to the brink of financial disaster.[2]

After repeated attempts to resolve disputes with BJC's personnel failed, MACTEC had no other option but to seek the advice of legal counsel. Given the gravity of MACTEC's financial position and the complex nature of the disputes, MACTEC retained Kilpatrick Stockton LLP ("Kilpatrick") in 2004. Kilpatrick's repeated attempts to recover MACTEC's unpaid but earned funds in 2004 and early 2005 met with the same unreasonable, unfounded rejections from the stubbornly resistant BJC. With all its options exhausted, MACTEC had no other option but to file a Complaint with this Court in July 2005.

---

[2] The Court found that even after MACTEC recovers 96 cents on the dollar of its prayed for damages, it still has over $9,335,335 in incurred out-of-pocket losses on this project. <u>See</u> FOF/COL ¶ 470.

3

US2000 10881547.5

BJC's "pervasive bad faith and unfair dealings" did not stop at the conclusion of the project. They continued throughout the course of litigation up until BJC's final post-trial brief. Indeed, the Court found that "BJC's False Claims Act contentions set out in its Proposed Findings of Fact and Conclusions of Law constitute <u>but another example of its bad faith</u>." See FOF/COL ¶ 664 (emphasis added).

After four, long, hard-fought and financially draining years, MACTEC has finally received a Judgment Order awarding its long-overdue subcontract balance and funds for its earned extra work. However, MACTEC's vindication came at a hefty price. MACTEC incurred $1,618,566.33 in attorneys' fees pursuing its claims and defending against BJC's unrelenting attacks. But for BJC's "pervasive bad faith and unfair dealings," MACTEC would not have had to retain Kilpatrick and would not have incurred the expense of a protracted litigation against one of the world's pre-eminent construction law firms based out of Washington, D.C., Thelen Reid Brown Raysman & Steiner LLP.

The complex nature of this technical case, entitles MACTEC to a full recovery of its requested attorneys' fees.

## II. SUMMARY OF MACTEC'S FEES REQUESTED

### A. MACTEC'S EXPENDED ATTORNEYS' HOURS

To support its motion, MACTEC submits herewith as Exhibits 1 and 3 the declarations of Brian G. Corgan, Esq. and John Threadgill, Esq. These declarations have attached the invoices from both Kilpatrick and Threadgill Law Firm, P.C. These invoices show all the attorneys' hours expended on the case on a day-by-day basis through June 18, 2008.[3] These invoices were

---

[3] MACTEC is also entitled to its reasonable attorneys' fees for all post-trial motions and any subsequent appeal. <u>Lowry v. Whitaker Cable Corp.</u>, 472 F.2d 1210 (8th Cir. 1973); <u>Marks v. Prattco, Inc.</u>, 633 F.2d 1122 (5th Cir. 1981). MACTEC reserves the right to supplement this motion upon the filing of any subsequent appeal.

4

US2000 10881547.5

Case 3:05-cv-00340  Document 129  Filed 06/17/08  Page 4 of 17  PageID #: 2880

created from the contemporaneous time records maintained by MACTEC's attorneys, as confirmed by the supporting declarations.

Attorneys Brian Corgan and Chad Theriot were the primary attorneys that prepared and litigated this matter. Susan Quattrocchi is the paralegal who assisted with this case from inception through trial. It was not until the eve of trial that additional attorneys and staff began to actively bill time to the case. These additional attorneys and staff were required to prepare the trial exhibits and research the multitude of issues briefed in MACTEC's proposed findings of fact and conclusions of law. Still, MACTEC's attorneys remained cognizant of cost and attempted to delegate as much of the work to staff and junior associates as possible.

From the inception of its representation through the last invoice, Invoice No. 10988231 dated May 27, 2008, Kilpatrick Stockton LLP billed a total of 977 hours of partner time, 1,920 hours of senior attorney time, 722 hours of junior attorney time, and 1,978 hours of paralegal and law clerk time.

Since this last invoice, MACTEC's attorneys have spent time preparing this Motion and Memorandum, MACTEC's Bill of Costs, various post-judgment discovery filings and a writ of garnishment. Although Kilpatrick Stockton's attorneys have billed this time, Kilpatrick Stockton has not yet billed MACTEC for this time. MACTEC seeks recovery of $66,737.08 for this recent time as well.

From the inception of its representation through its last invoice, Threadgill Law Firm's billed a total of $33,805 to this action. Since this last invoice, Threadgill Law Firm has spent time preparing this Motion and Memorandum, MACTEC's Bill of Costs, and various post-judgment discovery and execution of judgment pleadings in the amount of $5,513. Thus,

5

Theadgill Law Firm has charged a total of $39,318 by way of its representation of MACTEC. MACTEC seeks recovery of all these attorneys' fees.

In further support, MACTEC submits the declaration of Ray Lacy who is an attorney that practices in the Eastern District of Tennessee. Mr. Lacy confirms the reasonableness of (a) the time invested, and (b) the hourly rates sought by MACTEC for its attorneys given the facts and legal issues. His declaration is attached hereto as Exhibit 3. Mr. Lacy's attorneys' fees for his services are $6,690 and are also taxable to BJC.

### B.  MACTEC'S RATES

Plaintiff seeks an award of attorneys' fees at the average hourly rates of $456 for Kilpatrick's partners attorneys, $282 for Kilpatrick's senior associates, $207 for Kilpatrick's junior associates, and $185 for paralegals and law clerks.[4] Plaintiff respectfully submits that the higher rates for its attorneys is warranted under the facts presented and based on the factors discussed in the next section. In support hereof, MACTEC submits the declarations of its counsel, Exhibits 1 and 3.

### III.  MACTEC'S FEES ARE REASONABLE

"'The primary concern in an attorneys fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000). Federal district courts apply the "lodestar" formula to determine whether a fee is reasonable. Hensley v. Eckerhart, 461 U.S. 424,433-34, 76L. Ed. 2d 40, 103 S. Ct. 1933 (1983). Hensley has been followed by this District and the Sixth Circuit. See Adcock-Ladd, 227 F.3d at

---

[4] The U.S. Supreme Court has specifically recognized the propriety of awards for paralegals, law clerks, and recent law school graduates at prevailing rates. Missouri v. Jenkins by Agyei, 491 U.S. 274, 288, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989).

6

US2000 10881547.5

350. <u>Adcock-Ladd</u> is the often-cited case governing attorneys' fees cases in this District. There, the Sixth Circuit discussed the lodestar amount and the adjustments thereto:

> The trial court's initial point of departure, when calculating a "reasonable" attorney fee, should be the determination of the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate. The trial judge may then, within limits, adjust the "lodestar" to reflect relevant considerations peculiar to the subject litigation.

<u>Id.</u> (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); referencing <u>Reed v. Rhodes</u>, 179 F.3d 453, 469 n. 2 (6th Cir.1999)). Under the lodestar approach, attorneys' fees are assigned a lodestar amount, which is a figure calculated by multiplying the number of hours the attorneys reasonably expended on the litigation times a reasonable hourly rate.

To determine the reasonableness of any amount billed in this matter, the Court may consider several factors, including the time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, and the professional relationship with the client. <u>Reed</u>, 179 F.3d at 472. The party seeking the attorneys' fees carries the burden of demonstrating an entitlement to the award. <u>Id.</u>

The Sixth Circuit has adopted factors that should be considered in the lodestar analysis. <u>Reed</u>, 179 F.3d at 471-72. Those factors are:

        (1) the time and labor required by a given case;
        (2) the novelty and difficulty of the questions presented;
        (3) the skill needed to perform the legal service properly;
        (4) the preclusion of employment by the attorney due to acceptance of the case;
        (5) the customary fee;
        (6) whether the fee is fixed or contingent;
        (7) time limitations imposed by the client or the circumstances;
        (8) the amount involved and the results obtained;
        (9) the experience, reputation, and ability of the attorneys;
        (10) the 'undesirability' of the case;

7

> (11) the nature and length of the professional relationship with the client; and,
> (12) awards in similar cases.

Reed, 179 F.3d at 471-72, fn. 3.

The Supreme Court has never suggested that any one such factor should substitute for the lodestar approach. Blanchard v. Bergeron, 489 U.S. 87, 87-88, 109 S.Ct. 939, 940, 103 L.Ed.2d 67 (1989). See also Blum v. Stenson, 465 U.S. 886, 901, 104 S.Ct. 1541, 1550; 79 L.Ed.2d 891 (1984) (rejecting argument that upward adjustment is improper under 42 U.S.C. § 1988). As noted by the U.S. Supreme Court, "[t]his Court's decisions have required that the initial estimate of a reasonable court-awarded fee be calculated by multiplying prevailing billing rates by the hours reasonably expended on successful claims, which 'lodestar' figure may then be adjusted by other factors." Id.

While no single factor reigns supreme, this Court and the Sixth Circuit have consistently held that one of the most important factors for the Court to consider in calculating the lodestar amount is the result obtained. Adcock-Ladd, 227 F.3d at 349. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. In the present case, MACTEC recovered over 95% of the damages it claimed. In addition, it defeated, in its entirety, counterclaims totaling $3.5 million. Accordingly, MACTEC achieved an excellent result in this case.

Additionally, of what are "reasonable" attorneys' fees is determined on a case by case basis in the trial court's discretion, rather than a rigid formula. Wayne v. Village of Sebring, 36 F.3d 517, 531-32 (6th Cir.1994) ("A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney."). This is true not only for the Sixth Circuit, but for Tennessee state courts as well. United Medical Corp. of Tennessee v. Hohenwald Bank &

8

Trust Co., 703 S.W.2d 133, 137 (Tenn. 1986); Sanders v. Gray, 989 S.W.2d 343, 345 (Tenn. Ct. App.1998).

MACTEC's rates sought herein are reasonable given the extraordinary results obtained and under the facts discussed below.

### A. MACTEC'S REQUESTED HOURLY RATES ARE REASONABLE

The following represents reasonable lodestar prevailing rates for the following professionals: an average rate of $438 per hour for Brian G. Corgan, a partner and an experienced litigator with nearly 30 years experience in cases involving – as was this one – complex issues of engineering and construction and the application of construction law; an average rate of $500 per hour for William E. Dorris, a partner and an experienced litigator with nearly 30 years experience in cases involving complex issues of engineering and construction and the application of construction law[5]; an average rate of $282 per hour for Chad V. Theriot, a senior associate with over seven years of experience in cases involving complex issues of engineering and construction and the application of construction law; an average rate of $207 per hour for all other junior associates; and an average rate of $202 per hour for Susan Quattrocchi, a paralegal with over 25 years experience primarily handling construction litigation matters.

The qualifications of each of the individuals who billed time in this matter are discussed in the attached Declarations of Brian G. Corgan and John Threadgill. Also included in these declarations are computer-generated printouts of the billing records for this matter. The history of this case – in particular the extraordinary result achieved – reveals that MACTEC's attorneys are experienced construction litigators that justifiably command a higher than market rate.

---

[5] Mr. Dorris billed 293 hours to this matter before being elected co-managing partner of Kilpatrick Stockton, LLP.

To arrive at a reasonable hourly rate, federal courts use the prevailing market rate. Adcock-Ladd, 227 F.3d at 350. The prevailing market rate is defined as the rate that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." B & G Min., Inc. v. Director, Office of Workers, 522 F.3d 657, 663 (6th Cir. 2008) (quoting Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618 (6th Cir.2007). Attached is a declaration from Ray Lacy who is a highly regarded litigator in Knoxville, Tennessee. Mr. Lacy has over twenty years of experience practicing within the venue of this Court. According to Mr. Lacy, the prevailing market rates for attorneys with the specialized practice of construction litigation – such as the attorneys from Kilpatrick Stockton who worked on this case – are at least $475 for Brian Corgan and William Dorris, up to $300 for someone with Chad Theriot's experience and up to $249 for junior associates. Based upon this declaration and the specialized skill and experience that Kilpatrick Stockton has offered on this case, these rates are reasonable and well within the prevailing market rates.

Additionally, the extraordinary results in this case should be considered in determining the reasonableness of MACTEC's fees. Hensley, 461 U.S. at 432. MACTEC brought the action to recover $9,177,422 in subcontract balance and for unpaid work it performed at the direction of BJC. On May 19, 2008, the Court entered its Judgment Order in MACTEC's favor ordering BJC to pay MACTEC $8,767,552, which amounts to approximately 95% of the original claim sought by the MACTEC.

Equally important, this Court should also consider the disposition of BJC's counterclaim when assessing MACTEC's attorneys' results and the reasonableness of their fees. BJC asserted a counterclaim against MACTEC alleging that MACTEC's work was defective. BJC repeatedly asserted this argument to justify its unreasonable withholding of MACTEC's subcontract

10

balance. After the two week trial concluded, this Court determined that BJC's counterclaim had no merit. The Court rejected BJC's <u>entire</u> counterclaim of $3,508,391. This is yet another indication of MACTEC's resounding success.

Further, the difficulty and complexity of the issues in this case should also be considered. <u>Chandler</u>, 2006 U.S. Dist. LEXIS 18051, 2-3. The underlying issues of this case were highly complex, ranging from over twenty (20) technical claims involving various environmental, radiological, civil, and hydro-geological engineering issues. This Court heard testimony from several experts in these fields. Clearly, this case involved complex issues that required a significant effort from MACTEC's counsel.

The Court should also consider how work in this matter was delegated. Work on this matter was mostly limited principally to three individuals in order to maintain efficiency and reduce time for others to gain knowledge of the casefile. Chad Theriot, a senior associate, drafted all filings, reviewed all of the thousands of project documents for relevance and privilege, completed caselaw research, prepared materials for the various hearings, argued various motions, presented MACTEC's position at mediation, routinely updated the client, deposed many fact witnesses, defended the deposition of many fact and expert witnesses, conducted witness preparation, presented both fact and expert witnesses at trial, cross examined fact witnesses at trial and coordinated many activities for a total of 1,920 hours. Brian G. Corgan, the partner primarily responsible for this case, coordinated case strategy and revised briefs. However, given the number of witnesses and the complexity of this case, Mr. Corgan also conducted witness preparation, deposed several BJC witnesses, defended expert witnesses, presented and cross examined witnesses (fact and expert) at trial and engaged in direct negotiations with opposing counsel for a total of 683 hours. MACTEC's attorneys also heavily

11

US2000 10881547.5

Case 3:05-cv-00340 Document 129 Filed 06/17/08 Page 11 of 17 PageID #: 2887

relied on the efforts of Kilpatrick's paralegal, Susan Quattrocchi, to manage the hundreds of thousands of documents produced, prepare the attorneys for depositions and for trial. MACTEC's attorneys properly and efficiently managed the time billed on this matter.

The Court may also consider the nature and length of the professional relationship between Kilpatrick and MACTEC. Both William Dorris and Brian Corgan have represented MACTEC on various issues for well over 15 years. They are trusted advisors to MACTEC and have obtained excellent results for MACTEC on cases across the country. Chad Theriot has also represented MACTEC on numerous other matters over the course of the past four years. Kilpatrick Stockton and MACTEC have a very healthy professional relationship that spans well over 15 years. Accordingly, MACTEC values Kilpatrick's expertise in this field and deems Kilpatrick's fee reasonable.

Another factor to consider are the awards by Kilpatrick's attorneys in similar cases. Mr. Corgan has litigated many cases that have resulted in similar outcomes. For example, Mr. Corgan successfully litigated a case in the Eastern District of Tennessee, which was affirmed by the Sixth Circuit, involving a construction dispute wherein Mr. Corgan's client won a significant recovery of the amount it claimed. Recently, Mr. Corgan achieved a victory in a federal jury trial in San Francisco wherein the case centered around yet another construction dispute. There, Mr. Corgan's client won another impressive victory receiving a significant amount of the money it claimed. These are but a few examples of Mr. Corgan's achievements. Kilpatrick will be pleased to provide an exhaustive list of Mr. Corgan's other successful results if the Court should need further evidence.

Finally, the Court should also consider the reputation of the attorneys because the experience, reputation, and ability of the lawyers performing the services also support a high fee

12

award. As a full service law firm, Kilpatrick maintains several groups of specialized attorneys. One of these specialized groups is the Construction Litigation group. This group's practice concentrates exclusively on construction litigation. Further, as noted in Brian Corgan's attached declaration, Brian Corgan and William Dorris are renowned construction litigators. They are consistently listed among the very top construction litigators by the national, legal community. Similarly, Chad Theriot has also garnered accolades within the construction legal community and brings to bear several years of industry experience prior to becoming an attorney. Together, they have all achieved success in their chosen field of construction law which justifies the fee requested.

Based upon the foregoing, MACTEC's fees based upon average rates of $456 for partners, $282 for senior associates, $207 for junior associates, and $185 for staff and experienced paralegals are reasonable.

### B. **MACTEC'S EXPENDED HOURS ARE REASONABLE**

#### B. **The Amount of Time Billed is Reasonable**

It is reasonable to conclude that the time expended in pursuit of MACTEC's absolute success – if it were the sole basis – was reasonable. However, even if an excellent result is achieved, here, as was clearly the case, a Court has the discretion to reduce the total number of hours claimed if these hours are unreasonable. Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co., 2003 WL 223082, at *3 (W.D. Tenn. Jan. 28, 2003). In Anglo-Danish, the court held that the relevant "question is whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed." Id. As the plaintiff, MACTEC has the burden of demonstrating that the amount of hours claimed is

13

reasonable. See Blum, 465 U.S. at 897.[6] The supporting facts and complicated procedural history are evidence that at the time when the work was performed, the time spent by MACTEC's attorneys was reasonable.

This action arose out of project that lasted more than four years and involved the design and installation of a landfill cap system that reduced the amount of radioactive waste leaking into the local environment. This engineering feat required the combination of many engineering and construction disciplines. Moreover, the project generated thousands and thousands of relevant project documents that needed to be understood for trial. Marshalling the facts, in itself, justifies the time expended by MACTEC's attorneys. But when the overwhelming trial result is added to this effort, it is clear that the time MACTEC's attorneys spent preparing this case for trial was reasonable.

The complicated procedure of this case also justifies the amount of timed billed by MACTEC's attorneys. MACTEC first filed its Complaint in July 2005. It was assigned to the late Honorable Judge Jarvis. After a series of discovery motions, the parties engaged in depositions. The parties deposed a combined fourteen (14) deponents. Further, the parties both identified a combined 862 trial exhibits out of a total population of hundreds of thousands of relevant documents. And, after a two week bench trial before this Court, the parties both submitted well over 300 pages of proposed findings of fact and conclusions of law. So, while this case followed the traditional procedural path of a bench trial, there was nothing typical about this case.

---

[6] The Supreme Court has stated that counsel "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Hensley, 461 U.S. at 437 n.12, 103 S. Ct. at 1941 n.12. Here, MACTEC's attorneys' invoices more than meet this burden. See attached Declarations of Brian Corgan and John Threadgill.

14

Moreover, MACTEC's Complaint included over 20 discrete claims, each having its own factual and legal basis. BJC also asserted numerous counterclaims, each having its own factual and legal basis. MACTEC's attorneys expended a great deal of time researching and analyzing the relevant legal theories that allowed it to achieve a successful award. This expenditure of time resulted directly in the success MACTEC received.

Given all of these factors, MACTEC's attorneys' fees incurred to prosecute its claim and defend against BJC's counterclaim are both reasonable and consistent with the complexity of this case.

## IV. MACTEC'S PRE-JUDGMENT INTEREST CALCULATION

This Court's Judgment Order entered on May 19, 2008 granted MACTEC pre-judgment interest from December 31, 2007 through May 19, 2008. Attached is a supporting declaration from Kirtus Lowther detailing MACTEC's interest calculation for these dates. The declaration is from MACTEC's senior accountant familiar with, and responsible for, the SWSA4 project.

MACTEC's pre-judgment interest calculation from December 31, 2007 through May 19, 2008 results in the amount of $333,979 in interest.

## V. CONCLUSION

Based upon the foregoing analysis, it is clear that MACTEC's attorneys' fees and pre-judgment interest calculation are reasonable. MACTEC has incurred attorneys fees in the amount of $1,572,558.33 for Kilpatrick Stockton LLP, $39,318.00 for Threadgill Law Firm and $6,690 for Ray Lacy's fees. Accordingly, MACTEC respectfully requests an Order awarding MACTEC recovery of its total attorneys' fees in the amount of $1,618,566.33 and pre-judgment interest from December 31, 2007 through May 19, 2008 in the amount of $333,979.

Respectfully submitted this 17th day of June, 2008.

15

KILPATRICK STOCKTON, LLP


/s/ Chad V. Theriot
Brian Corgan
Chad Theriot
Kilpatrick Stockton, LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
404/815-6500

John Threadgill
Threadgill Law Firm, P.C.
9724 Kingston Pike
Knoxville, Tennessee 37922
865/588-4100

ATTORNEYS FOR PLAINTIFF

|  |  |
|---|---|
| MACTEC, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:05-CV-00340 |
| BECHTEL JACOBS COMPANY, LLC, | ) ) ) |
| Defendant. | ) ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing document has been served upon all counsel or parties in interest in this cause either by electronic notification through the Court's ECF system, hand delivery to said counsel or parties, or by mailing a copy of same to said counsel or parties in a properly addressed and stamped envelope regularly deposited in the United States mail, or by overnight courier, as follows:

> Beverly Dean Nelms
> Frantz, McConnell & Seymour
> P O Box 39
> Knoxville, TN 37901-0039
> 865-546-9321
> Fax: 865-637-5249
> Email: bnelms@fmsllp.com
>
> Andrew D. Ness
> Thelen Reid, Brown, Raysman and Steiner LLP
> 701 Eighth Street, N.W.
> Washington, D.C. 20001
> 202/508-4368
> Email: adness@thelen.com

This 17th day of June, 2008.

> /s/ Chad V. Theriot
> Chad Theriot